UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. C-08-459-1 |
| | § | (CIVIL ACTION NO. C-10-29) |
| OCIEL OMAR DE LEON | § | |

### ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE AND DENYING A CERTIFICATE OF APPEALABILITY

Pending before the Court is Defendant Ociel Omar DeLeon's (DeLeon's) motion pursuant to 28 U.S.C. § 2255 (D.E. 50) which was received by the Clerk on January 22, 2010. The motion is dated January 11, 2010. The United States filed a combined response and motion to dismiss to the motion, which it supplemented with the Affidavit of defense counsel at trial. D.E. 61, 62, 63-1. This Court granted the government's motion for leave to supplement the record. D.E. 64. DeLeon has not filed a reply. For the reasons set out below, DeLeon's motion is DISMISSED WITH PREJUDICE.

### I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

### II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

DeLeon was arrested in June 2008 at the Falfurrias border checkpoint after five illegal aliens were found in the sleeper compartment of the tractor-trailer DeLeon was driving. D.E. 1. After being advised of his <u>Miranda</u> rights, DeLeon admitted that he was approached at a truck stop in Edinburgh, Texas and asked if he would transport the five illegal aliens to Houston, Texas in return for payment of $300 each. DeLeon agreed. D.E. 1. Two of the smuggled aliens gave sworn statements regarding the smuggling and identified DeLeon as the person who told them where to hide in the tractor. They admitted they were going to pay DeLeon when they got

to Houston. Id. Two illegal aliens were detained as material witnesses. D.E. 6. DeLeon is a legal resident of the United States.

DeLeon was indicted in July 2008, and charged with two counts of transportation of an illegal alien in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii). D.E. 17. Before he was indicted, DeLeon replaced his court appointed counsel with private counsel who succeeded in securing bail for DeLeon. D.E. 12, 13, 14. Shortly thereafter, the United States and DeLeon entered into a stipulation and moved to release the material witnesses back to Mexico. D.E. 21. The stipulation of testimony was filed with the Court in which each of the two material witnesses described being picked up at the gas station by the driver of the tractor trailer who was arrested with them and who instructed where to hide in the tractor. D.E. 23.

DeLeon entered into a Plea Agreement with the government in August 2008, pleading guilty to one count; the government agreed to dismiss count 2. D.E. 26. He was rearraigned the same day. D.E. 25. A Presentencing report was ordered and sentencing was scheduled.

The PSR calculated DeLeon's offense using the 2007 edition of the Sentencing Guidelines. The base offense level was calculated at 12, but Probation calculated a six point increase for conduct creating a substantial risk of harm to the five illegal aliens transported. D.E. 28 at ¶¶ 16, 17. DeLeon was given credit for acceptance of responsibility. Id. at ¶ 22. He had no criminal history points added and the resulting Guideline range was 18-24 months.

DeLeon's counsel objected to the enhancement for endangering conduct. During sentencing DeLeon used photographs of the interior of the cab of the truck in an effort to demonstrate that the occupants were not endangered in their hiding space. D.E. 37.

At the sentencing hearing, trial counsel argued that the aliens were in an open space under the sleeper berth, although the view of the space was obstructed from the side entry door

by a piece of cardboard. D.E. 56 at 6-9. Counsel attempted to show that the air conditioning vent under the berth blew air into that compartment and into the driver's compartment and that the berth was open to the driver's compartment. Id. at 9. The Court overruled the objections to endangering conduct and sentenced DeLeon to 18 months, a low-end Guideline sentence. Id. at 8-10.

After sentencing, trial counsel filed additional evidence with the Court further demonstrating the ventilation to the sleeper berth. D.E. 40. The Court resentenced DeLeon on November 26, 2008, after sustaining counsel's renewed objection to the endangerment points. D.E. 57 at 5. DeLeon was resentenced to 12 months imprisonment. Id. at 7. The Amended Final Judgment was signed on December 1, 2008. D.E. 43.

DeLeon did not appeal, but filed his § 2255 motion on January 22, 2010, approximately 13 months after resentencing.

### III. MOVANT'S ALLEGATIONS

De Leon claims that his trial counsel was ineffective in the following ways: 1) at and before sentencing for failing to advise De Leon, a resident alien, of the deportation consequences of a "plea conviction to the charges in federal court," such that he was "cut off from virtually any relief from deportation from the United States," failing to present a defense to the charges "where the government presented questionable affidavits or statements given to government agents as to petitioner's culpability without comparing such to petitioner's exculpatory evidence . . . .," and failing to "fully exercise discovery, conduct a preliminary hearing, cross examination of witnesses, failure to comprehend petitioner's status as a non-citizen." D.E. 50 at ¶¶ II-IV. DeLeon alleges prejudice claiming that without these alleged deficiencies, the result would have

been different such that a jury would have had a reasonable doubt of the charges against him. Id. at ¶ VI.

### IV. ANALYSIS

A.  **Statute of Limitations**

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.[1] 28 U.S.C. § 2255. The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired. Clay v. United States, 537 U.S. 522, 123 S. Ct. 1072, 1078-79 (2003); United States v. Gamble, 208 F.3d 536, 536-37 (5th Cir. 2000) (per curiam).

In order to timely appeal, a defendant must file a notice of appeal from a criminal judgment not later than ten days after entry of judgment. Fed. R. App. P. 4(b). At the time that DeLeon's criminal judgment was entered, Fed. R. App. P. 26(a)(2) provided that the ten-day period for appealing did ***not*** exclude intermediate Saturdays, Sundays and legal holidays.[2] Calculated under Rule 26 in effect at that time, then, ten days after December 1, 2008, was

---

[1] The statute provides that the limitations period shall run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

[2] At the time the judgment was entered against DeLeon, Rule 26(a), Fed. R. App. P., provided that when calculating time under the Federal Rules of Appellate Procedure, a litigant should "[e]xclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days, unless stated in calendar days."

Saturday December 13, 2008, which meant that DeLeon's notice of appeal had to be filed not later than Monday, December 15, 2008.

DeLeon did not appeal. His conviction became final when the time for filing an appeal expired, or on Monday December 15, 2008. He had one year from that date, or until December 15, 2009, to file his § 2255 motion. DeLeon's § 2255 motion was filed January 22, 2010, more than a month late, and is untimely.[3]

Although DeLeon acknowledges that his motion is untimely, he claims that the Court should nonetheless address it because he did not know he was subject to collateral consequences, i.e. deportation, until June 24, 2009. D.E. 50 at ¶ II. DeLeon does not mention "equitable tolling" by name, but his motion claims that he used diligence in protecting his rights after he became aware of his deportation in June 2009. Although the limitations period for § 2255 motions is not considered a jurisdictional bar, it is subject to equitable tolling "only 'in rare and exceptional cases.'" United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002) (quoting Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)). The only basis for DeLeon's claim that the one year limitation should not apply is his alleged lack of knowledge of the consequence of deportation until June 2009.

DeLeon's claim to equitable tolling fails on two grounds: he was first notified that he was subject to deportation during his Bond hearing in July 2008. This Court further advised him that he would be deported during his rearraignment on August 26, 2008, before he pleaded guilty,[4]

---

[3]   DeLeon is represented by counsel and does not get the benefit of the prison mailbox rule. Rule 3(d), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS.

[4]   THE COURT: Are you a United States citizen?
7 THE DEFENDANT: No, I am a resident.
8 THE COURT: You understand that if you enter a
9 guilty plea to this offense, you will probably be deported
10 and never allowed back in this country again without

and even if he was correct that he did not know until June 29, 2009, he still had time to meet the December 2009 deadline. Deleon's situation is not the rare or exceptional case where equitable tolling is required. See Turner v. Johnson, 177 F.3d 390, 391-92 (5th Cir. 1999) (per curiam); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998).

Accordingly, the Court concludes that DeLeon's failure to file his § 2255 motion within the one-year limitations period requires that the motion be dismissed with prejudice as time-barred.

**B.     DeLeon Waived His Right to File a § 2255 Motion**

DeLeon's Plea Agreement included a waiver of his right to appeal and to collaterally attack his sentence. D.E. 26 at ¶ 7.[5] At rearraignment, the Court went over the plea agreement and Deleon's waiver of right to appeal or to collaterally attack his sentence. D.E. 55 at 9-10.[6]

---

11 permission of the Attorney General of the United States or
12 the Secretary of the Department of Homeland Security, and if
13 you should come back in without that permission you could be
14 subject to a new crime, a felony, the federal felony of
15 illegal reentry after a lawful deportation, and that is
16 punishable by up to 20 years. And if you come back in while
17 you are on supervised release from this offense, you could be
18 subject to two sentences, one on top of the other. Do you
19 understand this consequence for entering a guilty plea here
20 today?
21 THE DEFENDANT: Yes, Your Honor.
D.E. 55 at 5.

[5]  "Defendant waives his/her right to appeal both the conviction and the sentence imposed. Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only 9a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Se3ntencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that 28 U.S.C. § 2255, affords the right to collaterally attack" a conviction or sentence after the conviction or sentenced has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding." Id.

[6]  "THE COURT: I am going to go over with you your
15 trial rights. Is there a waiver of an appeal in this?
16 MR. THORPE: There is, Your Honor.
17 THE COURT: All right. I want to make sure you

Before questioning DeLeon about the waiver of his appeal and habeas rights, the Court questioned DeLeon about the communication between him and his attorney. DeLeon professed to be satisfied, that his attorney had gone over the indictment with him, and had answered all of DeLeon's questions. D.E. 55 at 7. DeLeon waived all of his trial rights as well. Id. at 11. After explaining all his rights, the Court asked the government to summarize the plea agreement. The summary included the waiver of appeal and post-conviction remedies. DeLeon confirmed that it was his agreement, that he had gone over it with his attorney, and that he understood it. Id. at 11-13.[7] DeLeon denied that anyone had forced him to plead guilty and that his decision was entirely voluntary. Id. at 17.

DeLeon does not explain why this Court should ignore his waiver. His waiver is presumed valid and an ineffective assistance claim survives such a waiver "only when the

---

18 understand that you, all these trial rights that you are
19 entitled to you are giving up here today by entering a guilty
20 plea, and one of them is a right to appeal this case. And
21 another one, separate and apart from your right to appeal, is
22 a right to file a 2255 or writ of habeas corpus. Wherein you
23 would ordinarily have a right in a writ of habeas corpus to
24 complain about ineffective assistance of counsel or
25 jurisdiction or constitutionality, if you go forward with
1 this plea you give up both your right to appeal and this
2 right to file a writ of habeas corpus. Do you understand
3 that?
4 THE DEFENDANT: Yes, Your Honor."
Id.

[7] THE COURT: That's your -- labeled Memorandum of
12 Plea Agreement. Can you identify this document as your plea
13 agreement with your signature on the last page?
14 THE DEFENDANT: Yes, I can identify my signature on
15 the last page.
16 THE COURT: And that is your plea agreement?
17 THE DEFENDANT: Yes, ma'am.
18 THE COURT: Did you read it completely before you
19 signed it and discuss it completely with your attorney before
20 you signed it?
21 THE DEFENDANT: Yes, Your Honor.
Id.

claimed assistance directly affected the validity of that waiver or the plea itself." United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002); United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).

DeLeon challenges the court's sentencing of him, and also raises several ineffective assistance of counsel claims, none of which challenge the validity of the waiver itself, or challenge his counsel's advice related to the waiver. Thus, his waiver of his right to file a § 2255 motion is valid and enforceable. His motion is not properly before the Court. See generally White. Despite DeLeon's untimely filing and his waiver of the right to file a § 2255 motion, the Court reviews DeLeon's claims for merit.

### C. Standard for Claims of Ineffective Assistance

Claims that counsel was ineffective are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that her counsel's performance was both deficient and prejudicial. Willis, 273 F.3d at 598. A movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one").

When evaluating whether counsel's performance was deficient, judicial review of the performance "must be highly deferential, and courts must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Galvan v.

Cockrell, 293 F.3d 760, 764 (5th Cir. 2002). A court reviewing a claim of ineffective assistance of counsel begins with the presumption that counsel's performance was reasonable. See United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999). The movant has the burden to show that his counsel was ineffective. See United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999).

### C. DeLeon's Claim that Counsel Was Ineffective for Failing to Ascertain Legal and Immigration Consequences of his Plea

DeLeon claims generally that his attorney did not tell him that he was subject to deportation if he pleaded guilty. Defense counsel has submitted an Affidavit in which he asserts that he knew of DeLeon's immigration status and that he advised him of the likelihood of deportation. D.E. 63, Exhibit 1.

As early as July 8, 2008, the Pretrial Services Report noted DeLeon's status as a resident alien and the likelihood that he would be deported if convicted. D.E. 16 at ¶ 5. Before accepting his guilty plea, the Court advised DeLeon that he could confer with his counsel during rearraignment. The trial court advised DeLeon that he would likely be deported if he pleaded guilty. DeLeon acknowledged that he understood that consequence. D.E. 55 at 5 (quoted *infra* at footnote 4). After acknowledging that he understood that he was subject to deportation, DeLeon pleaded guilty. D.E. 55 at 20.[8]

Even if DeLeon is correct that his trial counsel did not advise him that he would be deported, which counsel denies, DeLeon cannot demonstrate any prejudice from counsel's

---

[8] THE COURT: I am satisfied and therefore find that
8 there is a factual basis for your plea. Mr. Ociel Omar De
9 Leon, in Cause Number C-08-459, what is your plea to Count 1,
10 guilty or not guilty?
11 THE DEFENDANT: Guilty.
12 THE COURT: Are you pleading guilty because you are
13 guilty?
14 THE DEFENDANT: Yes, ma'am.
Id.

failure. DeLeon was advised of the consequence of his guilty plea or conviction before he entered his guilty plea. This ground fails.

### D.     DeLeon's Claim that Counsel Was Ineffective for Failing to Challenge the Government's Case Against Him

DeLeon claims that counsel did not present a defense or perform an adequate investigation. Counsel denies that allegation and states that he believed the evidence against DeLeon was "overwhelming." D.E. 63, Exhibit 1. DeLeon contends that the evidence against him was "circumstantial, inadmissible, or coerced by government witnesses or counsel in an effort to avoid a trial." D.E. 50 at ¶ VII.

The evidence in this case was strongly against DeLeon. Five illegal aliens were found concealed in his tractor trailer sleeper cab at the Falfurrias border checkpoint. The government could have proved its claim through the testimony of government law enforcement officers and DeLeon's admissions at the checkpoint. D.E. 1.

Counsel may be ineffective for failing to perform the investigation needed to protect a client's rights, but DeLeon cannot prove prejudice here. Wiggins v. Smith, 539 U.S. 510, 521-23, 123 S.Ct. 2527 (2003). "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984)).

Based upon the evidence available, recommending to DeLeon that he plead guilty did not fall below professional standards. In light of the evidence against him, DeLeon certainly would have been convicted and would have faced a stiffer sentence than he received. He would have likely been found guilty on two counts instead of one and received no credit for acceptance of

responsibility. DeLeon's claim that counsel was ineffective for failing to challenge the government's case and failing to conduct an appropriate investigation is without merit.

E.   **Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although DeLeon has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . .only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

DeLeon has not met the above standards so as to entitle him to a COA. For all of the reasons set forth herein, the record in this case plainly establishes that DeLeon is not entitled to relief. Jurists of reason would not debate this. Accordingly, DeLeon is not entitled to a COA.

## V. CONCLUSION

For the above-stated reasons, DeLeon's motion under 28 U.S.C. § 2255 (D.E. 50) is DISMISSED with prejudice. The Court also DENIES DeLeon a Certificate of Appealability.

SIGNED and ORDERED this 10th day of January, 2011.

_____
Janis Graham Jack
United States District Judge